PER CURIAM.
This cause is before us on petition of The Florida Bar, charging Respondents with the unauthorized practice of law. In response to this Court’s Rule to Show Cause, Respondents filed their respective answers.
The Petition of The Florida Bar reads, in pertinent part, as follows :
“VI. A. Respondent, Ivor W. Howard, was and is a resident of Lake Worth, Palm Beach County, Florida.-
“B. Respondent Fidencia V. Heller, nee Montez, was and is a resident of Lake Worth, Palm Beach County, Florida.
“C. Respondents, Ivor W. Howard and Fidencia V. Heller, nee Montez, were not and are not members of The Florida Bar and were not and are not therefore licensed to engage in the practice of law in the state of Florida.
“VIL A. Respondent, Ivor W. Howard, was and is an associate and/or secretary of Leon S. Heller, and has held herself out in those capacities.
“B. Respondent, Fidencia V. Heller, nee Montez, was and is the wife of Leon S. Heller.
“C. Leon S. Heller was enjoined by the Supreme Court of Florida on May 5, 1971, in The Florida Bar v. Heller, 247 So.2d 434 (Fla.1971) from continuing activities constituting the unauthorized practice of law.
“VIII. Respondents, Ivor W. Howard and Fidencia V. Heller, nee Montez, have engaged in the unauthorized practice of law in Palm Beach County, Florida by one or more of the following:
“A. Respondents have associated themselves with, directly participated in, and actively facilitated various activities of Leon S. Heller, said activities constituting violations of the May S, 1971, Florida Supreme Court Order holding that Leon S. Heller:
“be enjoined and restrained from offering proposing or soliciting any other person, firm or corporation, having or appearing to have any claim, or interest, in or to lands, properties or monies in the state of Florida, or engaging in any transaction with any such person, firm or corporation, by which he is to recover such lands, properties, or monies, or any part thereof, for another, for compensation, either in money or thing, and from preparing or causing to be prepared, without the aid of a licensed member of The Florida Bar, any document necessary or relevant to the administration of any estate of any incompetent or deceased person, testate or intestate, in the courts of the State of Florida.
“B. By such association and direct participation, Respondents have actively encouraged and nurtured the unauthorized practice of law in Florida.
“C. During the period subsequent to May 5, 1971, Respondents have engaged in the solicitation of persons having an interest in lands, properties or monies in the State of Florida with offers to provide services of a legal nature in reference to such lands, properties or monies in return for compensation.
“D. During the period subsequent to May S, 1971, Respondents have caused to be prepared without the aid of a duly licensed member of The Florida Bar documents affecting substantial legal interest in lands, properties or monies.
“E. In or about July, 1971, affidavits of ownership and assignment in regard to tax deed sales of June 7, 1971, certificate numbers 1416 and 589, were filed in the office of the clerk of the Circuit Court of Palm *517 Beach County, Florida, designating Respondent, Fidencia V. Heller, nee Montez, as ‘F. V. Montez,’ attorney-in-fact for Louise Luke and Mabel Probert, respectively. Relevant portions of said affidavits are:
‘ . . . I do hereby make, constitute and appoint F. V. Montez my true and lawful attorney for me in my place and stead to receive all monies to which I may be lawfully entitled to receive from the ownership of the above described real property, and do authorize him personally to institute and maintain any and all legal proceedings in my name that may be necessary, proper and advisable to collect same, and do authorize him to take and receive said monies in my name, and further authorize him to sign any and all papers or documents necessary in order to receive said amount of monies from the above tax deed sale . (Emphasis added).
“Said affidavits further recite: ‘affiants have been acquainted with the subject tax deed sale and know the contents thereof from information and explanation given to them.’ Both affidavits were witnessed and notarized by Respondent, Ivor W. Howard. In reference to tax deed sale certificate number 1416, check number 19244 was issued by the Circuit Court clerk to Respondent, Fidencia V. Heller, nee Montez, as ‘F. V. Montez,’ in the amount of $471.86, representing one-half of the overbid from said tax deed sale.
“F. On April 22, 1972, Respondent, Ivor W. Howard, notarized a quit claim deed executed by Ronald I. Baron and Marilyn S. Baron to Sun Mold Corporation. Said deed was executed on November 1, 1965, wherein. Respondent, Ivor W. Howard’s signature appears as a witness (Emphasis added).
“G. On May 5, 1972, Respondent Ivor W. Howard, sent a letter together with a copy of a quit claim deed from Dorothy Mc-Knew to Sun Mold Corporation, requesting $2,053.13 overbid on a tax deed sale held on April 28, 1972.
“H. On May 6, 1972, Respondent, Ivor W. Howard, sent a letter to the clerk of the Circuit Court of Palm Beach County, Florida, regarding a tax deed sale of August 2, 1971, certificate number 159 of 1965. Said letter requested that action be taken in reference to an overbid and further recited various activities undertaken by Leon S. Heller and Respondent Howard in searching records, recording instruments and providing services of a legal nature to Katheryn G. Long. Said letter was accompanied by an affidavit of ownership and assignment dated April 24, 1972, in which Respondent, Fidencia V. Heller, nee Montez, as ‘F. V. Montez,’ is named attorney-in-fact ‘to represent her (Kathryn G. Long) and to submit her Proof of Claim for Reimbursement under Section 192.24, Florida Statutes . . .’
“I. In April, 1973, Respondent, Ivor W. Howard, accompanied Leon S. Heller to the home of Aino Taipale, 1303 West Alho Drive, Lantana, Florida, where discussions and representations as to legal rights and services were conducted with Mrs. Linda Niskala concerning property she owned, but upon which taxes were delinquent. Respondent Howard directly participated in execution of an affidavit of ownership and assignment by Mrs. Niskala designating Respondent, Fidencia V. Heller, nee Montez, as ‘F. V. Montez,’ her attorney-in-fact. Relevant language of said affidavit outlining the scope of the attorney-in-fact’s powers include:
‘That affiant, for and in consideration of the sum of $10.00 and other valuable consideration in hand paid by F. V. Montez, I do hereby constitute and appoint F. V. Montez my true and lawful attorney for me in my place and stead “to receive all monies to which I may be lawfully entitled to receive from the ownership of the above described real property and I do authorize him personally to institute and maintain any and all *518 legal proceedings in my name that may be necessary, proper, or advisable to collect same and authorize. him to take and receive said money in my name and further authorize him to sign any and all papers or documents necessary in order to receive said amount of money.” And I hereby make formal demand for and request said amount of money to be paid to F. V. Montez, my ‘attorney-in-fact’ (Emphasis added).
“Said affidavit further recites that ‘full explanation in the premises’ were made to affiant by ‘F. V. Montez’ as attorney-in-fact, yet Respondent, Fidencia V. Heller, nee Montez, as ‘F. V. Montez,’ was not present during the execution of said affidavit, did not therefore explain the significance of same and was completely unknown to Mrs. Linda Niskala at all relevant times. Mrs. Niskala received a check dated April 7, 1973, drawn on the account of Respondent, Fidencia V. Heller, nee Montez, as ‘Fidencia V. Heller.’ Appearing on the back of the check are the words: For ‘QCD and Assignment of TD OB Ctf. 1562 Tr in 19-44-43 sold at TD sale 3/5/73.’
“J. On April 7, 1963, Respondent, Ivor W. Howard, sent a letter to the clerk of the Circuit Court of Palm Beach County together with an affidavit of ownership and assignment of lands owned by Mrs. Linda Niskala, requesting the overbid from a tax deed sale of March 5, 1973. Said letter recites that the affidavit of ownership is properly executed and refers to ‘F. V. Montez’ as attorney-in-fact for Mrs. Nis-kala.
“K. For the above described activities and services, Respondents either charged fees or were given compensation in various amounts.”
Respondent Heller’s answer reads as follows :
“Fidencia V. Heller does hereby state that she is the lawful wife of Hon. Leon S. Heller.
“Respondent further states that any and all acts and deeds done by her were upon the request of Leon S. Heller, her husband, an honorable man, a very hard working man.
“That Leon S. Heller, my husband is assuming all responsibilities for any acts and deeds I have done upon his request.
“Respondent at no time in the past, at present, nor in the future, has assumed or presumed to be a practicing attorney, nor will she in the future.
“Respondent will at all times obey her husband who is trustworthy, kind, loving, considerate and beyond any reproach.”
Respondent Howard’s answer reads, in part, as follows:
“Ivor W. Howard, respondent, does hereby state . . . that at no time in the past, at this time, nor at any time in the future, did she attempt to practice law, nor does she intend to practice law.
“Respondent has served Hon. Leon S. Heller, a title examiner, exclusively as a typist and Notary Public. At no time did respondent originate any activity whatsoever. Any and all work done was at the exact dictation of Leon S. Heller.”
In its petition, The Florida Bar sought the following relief:
“1. That this Court issue its order direcited to Respondents . . . commanding the said Respondents to show cause, if any there be, why Respondents should not be adjudged in contempt for the unauthorized practice of law in the state of Florida.
“2. That this Court issue a permanent injunction preventing and restraining the Respondents from engaging in the practice of law in the state of Florida.
“3. That this Court direct a hearing before an appointed Referee to make determinations of all factual and legal issues presented.
*519 “4. That this Court grant such other and further relief as to it may seem meet and proper.”
Having issued its Order to Show Cause, this Court directed that a hearing be held before Judge John R. Beranek, acting as Referee. The report of the referee reads in pertinent part, as follows:
“Respondent Howard testified that she only did secretarial work and was paid for it on an hourly basis by Leon S. Heller, who is presently the subject of proceedings in another case. She has ceased her employment with Heller and has testified that she has no objection to an injunction being entered against her because she has no intention of continuing this activity in the future. She is presently employed and has been for the past several years as the librarian at Palm Beach Junior College, and she has worked for Heller in her spare time. She has typed most of the legal documents which have gone into evidence and where notarization is required she has notarized most of them. There is no evidence to indicate that she has done anything other than at the direction of Heller in her capacity as secretary or notary public.
“Fidencia V. Heller is the wife of Leon Heller and has testified that she will do anything which he requests, but that she has no real knowledge of his business activities. Her name appears on various documents which went into evidence as ‘attorney and fact’ for various people who Heller has represented in order to obtain tax overbids. The activities of Leon Heller are described in detail in Florida Bar v. Heller, 247 So.2d 434 (Fla.1971). The evidence in this case indicates that Heller has continued to engage in such activities with the assistance of his wife whose name was used as an attorney in fact. It should be noted that her name was almost always used as F. V. Montez, which was her former name. She had no explanation for why she did not use her married name other than it was simply a habit to use her former name. She admitted that she also used her married name on occasions not involved in the activities which are the subject of this case.
“Respondent Heller testified that although checks were often made payable to her she simply endorsed them over to her husband and that she never received any money directly from her activities. She has a background of being rather unsophisticated in business matters.
“Respondent Heller filed an answer which she signed (and which was prepared by her husband) in which she stated that everything she has done was at the request of her husband, and that she will in the future at all times obey her husband.
“Based upon the foregoing it is my finding that both respondents have, perhaps unwittingly, aided and abeded [sic] Leon Heller in the unauthorized practice of law. It is my further finding that respondent Howard has no objection to an injunction being entered restraining her from further activities in this area. It would appear that a similar injunction should be issued against respondent Heller since she has stated that she will continue to obey the requests of her husband who has been found by referee McCauley in Supreme Court Case No. 44,222, to have been in ‘willful and flagrant violation’ of the injunction previously entered by the Supreme Court in 1971 as is outlined in the above cited case.”
The record and the Report of the Referee have been examined by this Court, and we agree that the foregoing conduct on the part of Respondents constitutes the unauthorized practice of law. We do hereby issue a permanent injunction restraining each of the Respondents from engaging in the acts complained of and from otherwise engaging in the practice of law in the State of Florida. Upon proof of any sub *520 sequent violation of the terms of this permanent injunction, Respondents, or either of them, will be held in contempt of this Court.
It is so ordered.
ADKINS, C. J., and BOYD, McCAIN, DEKLE and OVERTON, JJ., concur.